IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 05-cr-478-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **JAMES HUBER**,

    Defendant.

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

    Before the Court are Defendant James Huber's Motion for Compassionate Release (ECF No. 84) and Supplement to Mr. Huber's Motion for Compassionate Release (ECF No. 98). For the reasons explained below, the Court denies the motion.

### I. BACKGROUND

    James Huber is serving a sentence of forty years' imprisonment for four armed bank robberies occurring between March 3, 2002 and February 11, 2004 in Colorado, North Carolina, and Nebraska. (ECF No. 98 at 4.) Mr. Huber was apprehended on February 11, 2004 during his attempted robbery in Lincoln, Nebraska, and has been in custody since that date. (*Id.*) He is 56 years old. (*Id.* at 8.)

    Following his arrest in 2004, Mr. Huber was transferred to the District of Colorado to stand trial for his March 3, 2002 Longmont, Colorado robbery in Case No. 04-cr-080. (*Id.* at 4.) After a bench trial before the late U.S. District Judge Walker D. Miller, Mr. Huber was convicted of armed bank robbery in violation of 18 U.S.C. § 2113 and

using or carrying a firearm during and in relation to a crime in violation of 18 U.S.C. § 924(c).  (*Id.*; ECF No. 90 at 5, 13.)  He was sentenced to a total of 147 months' imprisonment (63 months' imprisonment for the bank robbery and 84 months' imprisonment to be served consecutively on the firearm violation).  (ECF No. 90 at 13.)

Thereafter, Mr. Huber's Nebraska and North Carolina cases were transferred to the District of Colorado pursuant to Federal Rule of Criminal Procedure 20.  (*Id.* at 5.)  Mr. Huber and the Government reached a plea deal by which Mr. Huber pled guilty to the following charges on October 23, 2006:

- One count of using or carrying a firearm during and in relation to a crime in violation of 18 U.S.C. § 924(c) in Case No. 05-cr-478;

- One count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) in Case No. 06-cr-283; and

- One count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) in Case No. 06-cr-304.

(ECF No. 43 at 1–2; ECF No. 90 at 6.)  In exchange, the Government agreed to recommend a total sentence of imprisonment—including the 147 months' imprisonment that Mr. Huber received following his conviction in Case No. 04-cr-080—of 480 months' (40 years') imprisonment for all four robberies.  (ECF No. 43 at 4; ECF No. 90 at 6.)  On January 12, 2007, Mr. Huber was sentenced by the late U.S. District Judge Wiley Y. Daniel to a total period of imprisonment of 480 months.  (ECF No. 50.)

Mr. Huber filed the *pro se* Motion on June 15, 2020.  (ECF No. 84.)  Mr. Huber was subsequently appointed counsel, who filed the Supplement to Defendant Huber's *Pro Se* Motion for Compassionate Release on September 10, 2020.  (ECF No. 98.)

The Government responded on September 17, 2020 (ECF No. 103), and Mr. Huber replied on September 24, 2020 (ECF No. 106).

Mr. Huber requests compassionate release for three reasons: (1) there have been substantial changes in the prosecution of and sentencing under 18 U.S.C. § 924(c); (2) following his conviction, he was diagnosed with post traumatic stress disorder ("PTSD"); and (3) his pre-existing conditions place him at an increased health risk should he contract COVID-19.  (ECF No. 84.)  The Court finds, for the reasons that follow, that compassionate release is not warranted in Mr. Huber's case at this time.

## II. ANALYSIS

### A. Compassionate Release Framework

Mr. Huber invokes the Court's authority to grant what is commonly referred to as "compassionate release."  The statutory basis for compassionate release is as follows:

> The court may not modify a term of imprisonment once it as been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[1] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth

---

[1] The parties agree that Mr. Huber asked the BOP to bring a motion on his behalf and received no response within thirty days.  (ECF No. 86; ECF No. 98 at 2; ECF No. 103 at 2 n.2.)

> > in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (I) extraordinary and compelling reasons warrant such a reduction;
> > >
> > > * * *
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

As this statutory language makes clear, the Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" upon a showing of "extraordinary and compelling reasons" that are "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) & (c)(1)(A)(I).  One Sentencing Commission policy statement that appears potentially relevant here is the following:

> [E]xtraordinary and compelling reasons exist [if] * * * [t]he defendant is—
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. 1(A)(ii).  The same policy statement also contains a safety valve for unexpected circumstances specific to the inmate: "[E]xtraordinary and

compelling reasons exist [if] * * * [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons [explicitly set forth]." *Id*. cmt. 1(D).

Mr. Huber argues that he is in poor health and is in substantial jeopardy should he contract COVID-19. (ECF No. 98 at 14.) As reflected in his medical documentation, Mr. Huber suffers from coronary artery disease, hypertension, hyperlipidemia, and chronic lung disease, and he had a heart attack in January 2016. (*Id.*; ECF No. 98-1 at 1–2.) These medical conditions put Mr. Huber at increased risk of a severe case of COVID-19, should he become infected. (*Id.*) *See* Centers for Disease Control and Prevention, "People With Certain Medical Conditions," *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated October 16, 2020). And while the Government describes its efforts to prevent and mitigate the spread of COVID-19 within federal prisons (*see* ECF No. 103 at 6–8, 13),[2] the past few months have shown that such efforts have been unsuccessful in many other prisons and that the virus which causes COVID-19, once introduced into a prison population, can spread very rapidly due to prisoners' inability to socially distance.

Not surprisingly, the Government concedes that Mr. Huber has established that he has "'extraordinary and compelling' medical reasons that *could justify* [his] release." (ECF No. 103 at 3–4, 12 (emphasis in original).) The Court agrees that the evidence

---

[2] Mr. Huber is currently housed at FCI Englewood, which currently has one positive COVID-19 case, and 6 inmates who have recovered from COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited October 26, 2020).

supporting this concession is extensive. Thus, as the Government also recognizes, this case therefore turns on whether the § 3553(a) factors weigh in favor of Mr. Huber's release. (*Id*. at 4.)

**B.     § 3553(a) Analysis**

By all metrics, it appears as though Mr. Huber has been an exemplary inmate. During his nearly 17 years of incarceration, he has completed his test of general educational development ("GED") (ECF No. 98-4), earned approximately 40 credit hours from Pueblo Community College with a 4.0 grade point average (ECF No. 98-5), taken approximately 30 educational and lifestyle change courses (ECF No. 98-6), tutored other inmates working toward their GED certificates (ECF No. 98 at 9), and earned the maximum amount of good time credits (ECF No. 98-3). According to his most recent BOP classification review, Mr. Huber's recidivism risk level is classified as "minimum." (ECF No. 98-9.) These facts all weigh strongly in Mr. Huber's favor. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (post-sentencing conduct is relevant to § 3553(a) analysis in any re-sentencing proceeding).

The Court also recognizes that Mr. Huber was diagnosed with PTSD in 2012 as a result of his two enlistments in the army. (ECF No. 98 at 12.) Mr. Huber served in active combat during the 1990 invasion of Iraq and was awarded the Kuwaiti Liberation Medal, Southwest Asia Service Medal with three Bronze Service Stars, Good Conduct Medal, National Defense Service Medal, Humanitarian Service Medal, Army Service Medal, and Overseas Service Ribbon. (*Id.* at 13.)

Weighing against Mr. Huber's request for compassionate release, however, is

the likely sentence he would face if sentenced today.  In § 403 of the First Step Act, effective December 18, 2018, Congress amended § 924(c) to provide that the 25-year consecutive term for a successive § 924(c) offense does not apply unless a defendant had a previous, final conviction for a § 924(c) charge at the time of the offense.  *See* 18 U.S.C. § 924(c)(1)(C)(i).  As noted in his Motion, Mr. Huber did not have a final § 924(c) conviction at the time he committed his subsequent § 924(c) offenses.  (ECF No. 98 at 16.)  Accordingly, Mr. Huber is currently serving a 40-year sentence which includes a consecutive 25-year sentence for a successive 18 U.S.C. § 924(c) offense that would not be imposed on a current offender.  (*Id.* at 15–16.)

However, under current law, Mr. Huber would still face a five-year consecutive sentence on each § 924(c) charge or a seven-year consecutive sentence on each § 924(c) charge for brandishing a firearm in each robbery.  (ECF No. 103 at 4.)  At the time he was sentenced for the instant offenses, Mr. Huber had already been convicted of a § 924(c) discharge offense and armed bank robbery in Case No. 04-cr-80, and was sentenced to 147 months' imprisonment (63 months with respect to the armed bank robbery count and 84 months consecutive sentence with respect to the § 924(c) violation).  (ECF No. 90 at 5, ¶ 5; ECF No. 98 at 4; ECF No. 103 at 4–5.)  Considering the four additional § 924(c) offenses that Mr. Huber faced from Case No. 05-cr-478, Case No. 06-286, and Case No. 06-cr-304, the parties agree that Mr. Huber would still face a total sentence of 27 to 35 years' imprisonment if he were resentenced today. (ECF No. 103 at 5; ECF No. 106 at 3.)

Also weighing against Mr. Huber's request for compassionate release is the nature of Mr. Huber's crimes, which are among the most serious and violent crimes that the undersigned has encountered.

- During his October 24, 2002 robbery (Case No. 06-cr-283) in Lumberton, North Carolina, Mr. Huber entered a bank teller's home by false pretenses and threatened to use a simulated explosive device if the bank teller did not assist him in robbing her bank. (ECF No. 90 at 8.) He also told the bank teller that there were other larger bombs hidden in a local hospital and high school that would be detonated if the bank teller did not cooperate with his demands. (*Id.*) He held the bank teller and her husband hostage overnight and forced the bank teller to travel to the bank with what she thought was a bomb so that she could assist him in taking $99,000 from the bank. (*Id.*) During this time, Mr. Huber held the bank teller's husband hostage at their home. (*Id.*)

- With respect to his August 5, 2003 robbery (Case No. 05-cr-478), Mr. Huber kidnapped and carjacked a bank teller at her car outside of a restaurant in Arvada, Colorado. (*Id.* at 7.) Thereafter he brandished a handgun at the bank teller, and forced her to take him to her bank where he forced her to carry what she believed to be a bomb into the bank so that she could assist him in robbing the bank of $69,400 cash. (*Id.* at 7.)

- During his February 11, 2004 attempted robbery (Case No. 06-cr-304), Mr. Huber confronted a bank teller outside a restaurant in Lincoln, Nebraska, brandished a weapon, and informed her that he planned on robbing her bank. (*Id.* at 9.) This victim was able to fake a heart attack, which caused Mr. Huber to abandon his attempted bank robbery. (*Id.*)

Taking all of this together, the Court finds that a sentence of time served (nearly 17 years) would not be consistent with "the nature and circumstances of the offense," § 3553(a)(1); "the need for the sentence imposed * * * to reflect the seriousness of the offense [and] * * * afford adequate deterrence to criminal conduct," § 3553(a)(2)(A)–(B); "the kinds of sentence and the sentencing range established for [Mr. Huber's crimes]," § 3553(a)(4); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,"

§ 3553(a)(6).

However, although the facts of Mr. Huber's underlying crimes were very serious and extraordinarily violent, the Court is of the view that Mr. Huber's request for compassionate release is in fact a very close call. Driving this conclusion is the record evidence of Mr. Huber's medical conditions, his PTSD diagnosis, and his exemplary record as an inmate. Nonetheless, the Court finds that Mr. Huber's request for compassionate release is not warranted *at this time* and denies Mr. Huber's Motion without prejudice. It is the Court's judgment that a motion for compassionate release brought after Mr. Huber has been in custody for at least twenty years would enjoy greater equities in its favor under § 3553(a).

### III. CONCLUSION

For the reasons set forth above, Mr. Huber's Motion for Compassionate Release (ECF No. 84) and Supplement to Mr. Huber's Motion for Compassionate Release (ECF No. 98) are DENIED WITHOUT PREJUDICE to refiling after the Defendant has been in custody for a minimum of twenty years.

Dated this 26th day of October, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge