**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 05-cr-478-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.**    **JAMES HUBER**,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

---

This matter is before the Court on Defendant James Huber's second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Second Motion"). (ECF No. 117.)  The Government filed a response (ECF No. 120), and Huber filed a reply (ECF No. 128).  For the reasons stated below, the Second Motion is granted.

## I.    BACKGROUND[1]

Huber is serving a sentence of forty years' imprisonment for four armed bank robberies occurring between March 2002 and February 2004 in Colorado, North Carolina, and Nebraska.  (ECF No. 117 at 1; ECF No. 107 at 1.)  Huber was apprehended on February 11, 2004 during his attempted robbery in Lincoln, Nebraska, and has been in custody since.  (*Id.*)  He is now 60 years old.  (ECF No. 117 at 1.)

Following his arrest in 2004, Huber was transferred to the District of Colorado to

---

[1] The following factual summary is based in significant part on the Court's prior Order denying Huber's first motion for compassionate release.  (*See* ECF No. 107.)  Internal citations from the Court's prior Order are omitted throughout this Order.

stand trial for his March 2002 Longmont, Colorado robbery in Case No. 04-cr-080. (ECF No. 107 at 1.)  After a bench trial before the late U.S. District Judge Walker D. Miller, Huber was convicted of armed bank robbery in violation of 18 U.S.C. § 2113 and using or carrying a firearm during and in relation to a crime in violation of 18 U.S.C. § 924(c).  (*Id.* at 1-2.)  He was sentenced to a total of 147 months' imprisonment (63 months' imprisonment for the bank robbery and 84 months' imprisonment to be served consecutively on the firearm violation). (*Id.* at 2.)

Thereafter, Huber's Nebraska and North Carolina cases were transferred to the District of Colorado pursuant to Federal Rule of Criminal Procedure 20.  (*Id.*)  Huber and the Government reached a plea deal by which Huber pleaded guilty to the following charges on October 23, 2006:

- One count of using or carrying a firearm during and in relation to a crime in violation of 18 U.S.C. § 924(c) in Case No. 05-cr-478;

- One count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) in Case No. 06-cr-283; and

- One count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) in Case No. 06-cr-304.

(*Id.*)  In exchange, the Government agreed to recommend a total sentence of imprisonment—including the 147 months' imprisonment that Huber received following his conviction in Case No. 04-cr-080—of 480 months' (40 years') imprisonment for all four robberies.  (*Id.*)  On January 12, 2007, Huber was sentenced by the late U.S. District Judge Wiley Y. Daniel to a total period of imprisonment of 480 months.  (*Id.*)

Huber filed his first motion for compassionate release in June 2020 ("First Motion").  (ECF Nos. 84, 98.)  The Court denied Huber's First Motion in October 2020 ("Prior Order"), finding:

> [A]lthough the facts of Mr. Huber's underlying crimes were
> very serious and extraordinarily violent, the Court is of the
> view that Mr. Huber's request for compassionate release is
> in fact a very close call. Driving this conclusion is the record
> evidence of Mr. Huber's medical conditions, his PTSD
> diagnosis, and his exemplary record as an inmate.
> Nonetheless, the Court finds that Mr. Huber's request for
> compassionate release is not warranted at this time and
> denies Mr. Huber's Motion without prejudice. It is the Court's
> judgment that a motion for compassionate release brought
> after Mr. Huber has been in custody for at least twenty years
> would enjoy greater equities in its favor under § 3553(a).

(ECF No. 107 at 9.)

The following year, Huber sent two letters to the Court (ECF Nos. 113, 114),
which it construed as a motion for reconsideration of its Prior Order (ECF No. 115). The
Court denied Huber's motion for reconsideration at that time, reasoning that "[w]hile the
Court is sympathetic to Defendant's arguments, the Motion fails to establish any of the
grounds for reconsideration" set forth in applicable Tenth Circuit precedent. (ECF No.
115 at 2 (citing *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.
2000).)

Huber's Second Motion comes four years after the Court's Prior Order and
almost three years after the Court's December 2021 Order denying his motion for
reconsideration. To date, Huber has served nearly 20 years and nine months of his 40-
year sentence. (*See* ECF No. 120-1 at 6.) He is currently projected to be released on
March 13, 2038, in roughly 13 years. (ECF No. 120 at 2; ECF No. 120-1 at 6.) In his
Second Motion, Huber seeks compassionate release for three reasons: his (1)
"[d]eteriorating medical condition"; (2) diagnosis of military service-related post-
traumatic stress disorder ("PTSD"); and (3) "[g]ood conduct as an inmate." (ECF No.
117 at 1.)

## II.    ANALYSIS

Huber again invokes the Court's authority to grant what is commonly referred to as "compassionate release."  Under the applicable statutory framework:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

There is no dispute that Huber has met the statute's exhaustion requirements by submitting a compassionate release request to the warden of his facility, to which he received no response within 30 days.  (ECF No. 117 at 2, 4; ECF No. 120 at 2.)  Thus, the Court considers below whether it may reduce Huber's term of imprisonment because (1) extraordinary and compelling reasons warrant such a reduction, (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and (3) the factors set forth in § 3553(a) are satisfied.  *United States v. McGee,* 992 F.3d 1035, 1042 (10th Cir. 2021).

### A.    Extraordinary and Compelling Reasons

In opposing Huber's First Motion, the Government previously conceded that "Huber's many health issues could constitute 'extraordinary and compelling

circumstances' justifying his compassionate release."  (ECF No. 120 at 2 (citing ECF Nos. 84, 98); *see also* ECF No. 107 at 6-7.)  As such, the Government expressly agreed that Huber's First Motion turned on the § 3553(a) factors.  (ECF No. 103 at 4.)

A supporting point in Huber's First Motion was that his medical conditions put him at increased risk of a severe case of COVID-19, particularly in view of the Government's failed efforts to mitigate its spread within federal prisons as an exacerbating circumstance.  (*See* ECF No. 107 at 5.)  The Government correctly points out that Huber no longer cites the COVID-19 pandemic as a reason for his compassionate release in the Second Motion.  (ECF No. 120 at 4.)  And the Court generally agrees that "[t]he risk of infection from COVID-19 has decreased substantially."  (*Id.*)

Nonetheless, the Government still appears to honor its prior concession that, even absent the COVID-19 pandemic as an aggravating circumstance, "Huber's many health issues could constitute 'extraordinary and compelling circumstances' justifying his compassionate release."  (ECF No. 120 at 2.)  Indeed, in previously concluding that Huber's request for compassionate release was "a very close call," the Court cited "the record evidence of Mr. Huber's medical conditions, his PTSD diagnosis, and his exemplary record as an inmate"—not the COVID-19 pandemic.  (ECF No. 107 at 9.)

The parties appear to otherwise agree that Huber's medical circumstances have not improved in the four years following his First Motion.  (*See* ECF No. 117 at 2 ("address[ing] only the very few changes over the past 3 years"); ECF No. 120 at 4 ("not much has changed in Mr. Huber's case").)  Huber explains in the Second Motion that his medical condition "continues to deteriorate" and represents to the Court that a cardiologist informed him in 2021 he had an enlarged artery in his heart "that may

require surgery but at least needs monitoring."  (*Id.* at 2-3.)  He also states his PTSD "is still not being addressed either through counseling, group therapy, or medication by the BOP," but he "feel[s] the V.A. could do much to help [him] live with this condition."  (*Id.* at 3.)

The Court thus sees little reason to depart from its prior conclusion that Huber presented extensive evidence of "extraordinary and compelling" medical reasons supporting his release.  (ECF No. 107 at 5); *see also* U.S.S.G. § 1B1.13(b)(1) (identifying "an ongoing outbreak of infectious disease" or "an ongoing public health emergency" as just one possible circumstance supporting extraordinary and compelling medical circumstances).  As such, the Court proceeds to consider the section 3553(a) factors.

**B.    § 3553(a) Factors**

Section 3553(a) sets forth a lengthy list of factors for the Court to consider in imposing a sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

The Government "again submits that [these] factors weight [*sic*] against compassionate release." (ECF No. 120 at 2.)

The Court previously concluded that Huber's exemplary conduct while in prison weighed strongly in his favor in the § 3553(a) analysis. (ECF No. 107 at 6 (citing *Pepper v. United States*, 562 U.S. 476, 491 (2011) (post-sentencing conduct is relevant to § 3553(a) analysis in any re-sentencing proceeding)).) In the Prior Order, the Court observed that "[b]y all metrics, . . . Mr. Huber has been an exemplary inmate." (ECF No. 107 at 6.) As of his First Motion:

> [Huber] ha[d] completed his test of general educational development ('GED'), earned approximately 40 hours from Pueblo Community College with a 4.0 grade point average, taken approximately 30 educational and lifestyle change courses, tutored other inmates working toward their GED certificates, and earned the maximum amount of good time credits. According to his most recent BOP classification review, Mr. Huber's recidivism risk level is classified as "minimum."

(*Id.*) Huber states in the Second Motion that he has "still not lost one single day of prison Good Time Credit in twenty years." (*Id.* at 3, 5-6.)[2]

---

[2] The Court further notes that the 2023 amendments to the Sentencing Guidelines expounded that:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. *However, rehabilitation of the defendant while serving the sentence may be considered in combination with*

The Court also previously recognized that Huber was diagnosed with PTSD in 2012 as a result of his two enlistments in the army.  (ECF No. 107 at 6.)  "Mr. Huber served in active combat during the 1990 invasion of Iraq and was awarded the Kuwaiti Liberation Medal, Southwest Asia Service Medal with three Bronze Service Stars, Good Conduct Medal, National Defense Service Medal, Humanitarian Service Medal, Army Service Medal, and Overseas Service Ribbon."  (*Id.*)  These facts, too, continue to weigh in Huber's favor.

Weighing against Huber's First Motion, however, was the fact that, if resentenced today, Huber would still face a total sentence of 27 to 35 years' imprisonment pursuant to § 924(c).  (ECF No. 107 at 7.)  The Court was also particularly troubled by the nature of Huber's crimes, which it described as "among the most serious and violent crimes that the undersigned has encountered."  (ECF No. 107 at 8.)  The Court took particular note of the following:

- During his October 24, 2002 robbery (Case No. 06-cr-283) in Lumberton, North Carolina, Mr. Huber entered a bank teller's home by false pretenses and threatened to use a simulated explosive device if the bank teller did not assist him in robbing her bank.  He also told the bank teller that there were other larger bombs hidden in a local hospital and high school that would be detonated if the bank teller did not cooperate with his demands.  He held the bank teller and her husband hostage overnight and forced the bank teller to travel to the bank with what she thought was a bomb so that she could assist him in taking $99,000 from the bank.  During this time, Mr. Huber held the bank teller's husband hostage at their home.

- With respect to his August 5, 2003 robbery (Case No. 05-

*other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.*
U.S.S.G. § 1B1.13(d) (emphasis added).

cr-478), Mr. Huber kidnapped and carjacked a bank teller
at her car outside of a restaurant in Arvada, Colorado.
Thereafter he brandished a handgun at the bank teller,
and forced her to take him to her bank where he forced
her to carry what she believed to be a bomb into the bank
so that he could assist him in robbing the bank of
$69,400 cash.

- During his February 11, 2004 attempted robbery (Case
  No. 06-cr-304), Mr. Huber confronted a bank teller
  outside a restaurant in Lincoln, Nebraska, brandished a
  weapon, and informed her that he planned on robbing
  her bank.  This victim was able to fake a heart attack,
  which caused Mr. Huber to abandon his attempted bank
  robbery.

(ECF No. 107 at 8.)  In view of the foregoing, the Court reasoned "that a sentence of

time served (nearly 17 years) would not be consistent with 'the nature of the

circumstances of the offense,' § 3553(a)(1); 'the need for the sentence imposed . . . to

reflect the seriousness of the offense [and] . . . afford adequate deterrence to criminal

conduct,' § 3553(a)(2)(A)-(B); 'the kinds of sentence and the sentencing range

established for [Mr. Huber's crimes],' § 3553(a)(4); and 'the need to avoid unwarranted

sentence disparities among defendants with similar records who have been found guilty

of similar conduct,' § 3553(a)(6)."  (ECF No. 107 at 8 (alterations in original).)

The facts of Huber's underlying offenses, of course, remain unchanged today.

However, a sentence of time served would now mean that Huber has served almost 21

years for his crimes.  The parties agreed in briefing Huber's First Motion, and the

Government continues to represent today, that Huber would receive a 27 to 35-year

sentence if he were resentenced under current 18 U.S.C. § 924(c).  (ECF No. 107 at 7.)

The Court also observes that, as of March 2024, Huber had earned 1,080 days (virtually

three years) of good time credit—the maximum amount possible.  (ECF No. 120-1 at 6.)

As such, if Huber had been sentenced under current guidelines and received the

minimum 27 years, his projected release date would be roughly February 2028.  Put

differently, a sentence of time served would result in Huber being released no more

than three years early under the current statutory minimum sentence.

      While the changes to section 924(c) are not retroactive, where "a defendant

otherwise establishes that extraordinary and compelling reasons warrant a sentence

reduction," the Sentencing Guidelines do permit the Court to consider "a change in the

law (including an amendment to the Guidelines Manual that has not been made

retroactive) . . . for purposes of determining the extent of any such reduction."  U.S.S.G.

§ 1B1.13(d).  Here, the Court is heavily persuaded by the fact that a sentence of time

served would actually be a modest reduction in Huber's sentence under current law,

and it furthers the "need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct."  § 3553(a)(6).

Moreover, the Court finds that a sentence of 21 years appropriately reflects the severity

of Huber's crimes and, as a significant term of incarceration, carries with it an adequate

specific and general deterrent effect.  § 3553(a)(2).

      All said, the Court finds the section 3553(a) factors weigh in favor of reducing

Huber's sentence to time served.

**C.**    **Danger to Others**

      The Sentencing Commission's applicable policy statement also directs that a

court may reduce a sentence only after determining that "the defendant is not a danger

to the safety of any other person or to the community, as provided in 18 U.S.C. §

3142(g)."  U.S.S.G. § 1B1.13(a)(2).  Under section 3142(g), relevant factors include (1)

the nature and circumstances of the offenses and conviction; (2) the weight of the

evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release.

The Court is persuaded that Huber is no danger to the community.  As of his First Motion, Huber's recidivism risk level was classified as "Minimum."  (ECF No. 107 at 6.) Huber's First Motion explained in great detail the familial and financial turmoil leading up to Huber's crimes—circumstances which are now 20 years behind him.  (*See* ECF No. 98 at 10-11.)  Moreover, at the time of his crimes and original sentencing, Huber's PTSD was undiagnosed and untreated.  (*Id.* at 12-14.)  The Court also finds comfort in the fact that Huber's sister and brother-in-law were supportive of his First Motion (ECF No. 98 at 15) and that Huber has requested to be released to a residential reentry center ("RRC") (ECF No. 117 at 3), such that he will have a stable environment and familial support upon his re-entry to society.

In sum, the Court concludes that Huber has presented sufficient good cause to warrant granting him in full the relief he seeks in his Second Motion.  After nearly 21 years of incarceration, he has paid his debt to society, and the time has come for him to once again enjoy his freedom, and hopefully going forward become a productive and law-abiding member of society.

### III.    CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Huber's Motion (ECF No. 117) is GRANTED, and his sentence is REDUCED TO TIME SERVED;

2.    This ORDER is STAYED for up to 14 days for the establishment of a release plan, which must include Huber's initial placement at an RRC, to make

appropriate travel arrangements, and to ensure his safe release;

3.    Huber SHALL BE RELEASED as soon as a residence is verified, a release plan

is established, and appropriate travel arrangements are made;

4.    If more than 14 days are needed to make appropriate travel arrangements and

ensure Huber's safe release, the parties shall immediately notify the Court and

show cause why the stay should be extended;

5.    Huber's previously-imposed conditions of supervised release remain unchanged,

subject to any modifications necessitated by his current circumstances; and

6.    The Government is DIRECTED to forthwith coordinate with Huber, the Probation

Office, and the BOP to facilitate full and timely compliance with this Order.

Dated this 4th day of November, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge